BETHLEHEM STEEL COMPANY, Appellant, *v.* TURNER CONSTRUCTION COMPANY et al., Respondents.

First Department, December 8, 1953.

*Ralph L. McAfee* of counsel (*Edward Q. Carr, Jr.*, with him on the brief; *Cravath, Swaine & Moore*, attorneys), for appellant.

*Frank A. Fritz* of counsel (*A. T. Antinozzi* and *Vincent Keane* with him on the brief; *Bleakley, Platt, Gilchrist & Walker*, attorneys), for respondents.

*Per Curiam.* The question presented on this appeal from a denial of plaintiff's motion for summary judgment is the meaning of the words "component materials" in a contract by which plaintiff agreed to furnish, erect and paint all structural steel work in a building for defendant Mutual Life Insurance Company. While the contract was with the defendant Turner Construction Company, that company was acting for defendant Mutual and it is Mutual which will hereafter be referred to as the defendant. The controversy arises out of an escalator clause permitting an increase in the contract price if there should be increases in the prices of "component materials, labor rates applicable to the fabrication and erection thereof and freight rates" in effect as of the date of the contract.

Plaintiff increased the price of steel after the contract date, although the price increase was in fact announced before the contract was executed. Plaintiff has billed defendant for such increased prices as well as other increases permitted by the escalator clause. Defendant challenges the validity of the extra charge insofar as it relates to an increase in steel prices, contending that it was never intended that plaintiff could unilaterally increase its contract charge by increasing its own charge for steel. Defendant asserts that by "component materials", an increase in the cost of which would justify an increase in the contract price, the parties meant materials enter-

ing into the manufacture and cost of steel and not the steel itself. Plaintiff contends, on the other hand, that the clear meaning of the language used in its context is that by "component materials" the parties meant steel, paint and the like of materials entering into the fabrication and erection of the steel on the job rather than the manufacture of the steel.

Defendant really offers nothing in support of its contention other than its own asserted understanding of the contract. We cannot find warrant for such an understanding in the contract and observe no triable issue.

The contract was for furnishing, erecting and painting structural steel work. The "component materials" of such work would be the steel, the paint and other materials used in erecting the steel. It could hardly mean the numerous raw products from ore to blast furnace which entered into the making of the steel. Furthermore, clearly, the labor rates applicable to the fabrication and erection of the component materials meant labor rates applicable to the fabrication and erection of the structural steel on the job and not labor rates along the steel production line. We conclude, perforce, that the escalator clause in its entirety related to the erection job and not to the manufacture of steel.

There is this to be said concerning defendant's complaint about plaintiff's unilaterally effecting an increase in price by raising its own quotations for steel. It is unlikely that plaintiff raised its price apart from a market-wide increase by all steel producers. While it was assumed that plaintiff would supply steel of its own making, that was not a requirement of the contract. The facts in respect to the increase in steel prices can be developed on an assessment of the amount owing plaintiff.

The order appealed from should be reversed and the motion for summary judgment granted and an assessment of the amount due plaintiff directed, with costs to appellant.

DORE, J. (dissenting in part). While Bethlehem's interpretation of the words in question may prevail after a trial, I think the words themselves are not necessarily capable of only one meaning and that the precise meaning Bethlehem claims; and, therefore, their application and meaning so far as the steel price is concerned should be finally determined only after a plenary trial in which all the surrounding circumstances may be shown so as to reveal the real intention of the parties at the time.

Mutual through its officer, Hughes, alleged that he negotiated with Bethlehem the prices and the conditions on which Bethlehem was to be paid. He specifically states that the negotiations were conducted by him and another with Paul Mackall, vice-president, and C. E. Simmons, contracting manager of Bethlehem; that Bethlehem delivered the " proposal " to him on June 28, 1948; and that, after discussion, a " verbal " agreement was reached in which Bethlehem agreed to provide the structural steel at a price of $182 a ton subject to escalation up to $15 per ton. No reply affidavit is furnished by plaintiff or any of its named officers. On this aspect of the appeal, plaintiff is relying on what amounts to a technicality, namely, that no formal written contract between Mutual and Bethlehem was made. Although it was drawn up, it was not formally signed between Mutual and Bethlehem; and the so-called " proposal " of June 28, 1948, containing the identical price adjustment clause as in the Turner-Bethlehem contract was never actually accepted in writing. But of course there was an agreement between Mutual and Bethlehem as well as between Turner and Bethlehem. Turner was not to pay a dollar under the contract between it and Bethlehem; Turner was to receive a fixed price as general contractor; and all payments were to be made and were made by Mutual. It is therefore unbelievable that Mutual had not agreed with Bethlehem and with Turner before the Turner-Bethlehem contract was made concerning the escalation clause and the price. This is made conclusive by plaintiff's failure to produce affidavits by its named officers that no such agreement was made.

But on Mutual's own construction of the dispute as to the price escalation clause in question, the items based upon changes in labor rates, freight rates and prices of material purchased by Bethlehem from others for use in performance of the contract, are due to plaintiff. The parties should be able in the interest of avoiding unnecessary litigation reasonably to agree on what the total is of these items. But if they cannot or will not, I recommend that the order should direct an assessment as to these items and the entry of judgment in favor of plaintiff of the total amount found to be due thereon.

Special Term in its opinion erroneously and prematurely held to be excluded at any trial evidence with regard to similar price adjustment clauses in other similar contracts. On the trial such evidence may be relevant as indicating an accepted practice and understanding in the trade as to such price adjustment clauses.

Accordingly, I dissent in part and vote to modify the order appealed from so as to grant plaintiff partial summary judgment based on changes in labor and freight rates and in prices of material purchased by Bethlehem from others and to otherwise deny summary judgment; and as so modified, I vote to affirm the order appealed from.

PECK, P. J., COHN, BREITEL and BASTOW, JJ., concur, in *Per Curiam* opinion; DORE, J., dissents in part, in opinion.

Order reversed, with $20 costs and disbursements to the appellant, the motion granted and an assessment of the amount due plaintiff directed.